## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JAMES LYONS,

        Plaintiff,

v.                                  CIV 98-1027 KBM – ACE

ANGELA ADAMS and ROMAINE SERNA,
in their individual capacities, and the State of
New Mexico, DEPARTMENT OF CHILDREN,
YOUTH & FAMILIES,

        Defendants.

## MEMORANDUM OPINION AND ORDER ON
## MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the remaining Defendants' Motion For Summary

Judgment Dismissing Count One of Plaintiff's Second Amended Complaint, *Doc. 70,* and Motion

For Summary Judgment Dismissing Count Two of Plaintiff's Second Amended Complaint, *Doc.*

*76.* Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have

me serve as the presiding judge and enter final judgment. Having reviewed the motions, the

memoranda and exhibits submitted by the parties and the relevant authorities, I find the motions

well-taken in part.

### I.  Procedural Background

Plaintiff, a state employee with the Human Services Department (HSD) and then with the

Children, Youth & Families Department (CYFD), brought this action under various theories

claiming retaliation for the exercise of protected First Amendment conduct. The matter was

originally assigned to District Judge C. LeRoy Hansen who dismissed certain claims and allowed Plaintiff to file a second amended complaint. *Doc. 39*.

Plaintiff's Second Amended Complaint For Damages and Declaratory And Injunctive Relief is a three-count complaint alleging violations of the First Amendment and procedural due process under 28 U.S.C. § 1983, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 504. It names Angela Adams, Terence Cady, Augustus Narbutas, Simon Romo, and Romaine Serna as defendants only in their individual capacities and only for the § 1983 counts. It names CYFD as defendant only on the Section 504 count. *Doc. 50*.

After the second amended complaint was filed Defendants Cady, Narbutas, and Romo were dismissed and the Section 504 count was dismissed (although the tendered order did not specifically dismiss CYFD). *See Docs 93, 90, 56*. Therefore, what remains and is before me are Plaintiff's § 1983 claims for First Amendment and procedural due process violations against Defendants Adams and Serna in their individual capacities.

## II. Summary Judgment Standard

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The Court must "view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence" that would justify sending the case to a jury. *Williams v. Rice*, 983 F.2d 177, 179 (10th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986)). Indeed, summary judgment

> is properly regarded not as a disfavored procedural shortcut, but rather as an
> integral part of the Federal Rules as a whole, which are designed "to secure the
> just, speedy and inexpensive determination of every action." . . . Rule 56 must be
> construed with due regard not only for the rights of persons asserting claims and
> defenses that are adequately based in fact to have those claims and defenses tried
> to a jury, but also for the rights of persons opposing such claims and defenses to
> demonstrate in the manner provided by the Rule, prior to trial, that the claims and
> defenses have no factual basis.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

### III.  Count II – Procedural Due Process Claim

After finding that Plaintiff failed to state a claim for substantive due process, Judge Hansen

noted Plaintiff

> asserted that he was not given an adequate name-clearing hearing following the
> sexual harassment investigation and such an assertion alleges that he has not
> received all of the procedural process that is due to him. . . . Given Plaintiff's
> situation, most notably that he continues to work for Defendant Department, the
> Court will allow him to move to amend the Complaint to seek a procedural due
> process remedy in the means of an adequate name-clearing hearing.

*Doc. 39 at 8-9.*  In his Second Amended Complaint, however, Plaintiff does not seek injunctive

relief in the form of a name-clearing hearing.[1]  Instead, he seeks compensation in the form of

damages.

Although Judge Hansen granted Plaintiff leave to file an amended complaint, he was not

---

[1] He does ask for injunctive relief in the form of "directing the Defendants to upgrade Plaintiff's position to that of Attorney Master retroactive to January 1, 1996."  The parties have not raised, nor need I now address, whether the Eleventh Amendment bars such relief in this action.  *E.g., Idaho v. Coeur d'Alene Tribe,* 521 U.S. 261 (1997); *Ellis v. University of Kansas Med. Center,* 163 F.3d 1186, 1196-1198 (10th Cir. 1998); *Elephant Butte Irr. Dist. v. Department of Interior,* 160 F.3d 602, 607-609 (10th Cir. 1998), *cert. denied,* 526 U.S. 1019 (1999).

ruling on the merits of the claim – he simply permitted an amendment to raise it.[2]  Plaintiff must

prove four elements to prevail on a claim that a stigmatizing charge violated a protected liberty

interest:

> (1)  it impugned his "good name, reputation, honor or integrity,"
> (2)  it was false,
> (3)  it was "published," and
> (4)  it was pursued "in the course of termination proceedings or . . . foreclosed future
>       employment opportunities."[3]

*See Lighton v. University of Utah,* 209 F.3d 1213, 1223 (10th Cir. 2000).  Having reviewed the

exhibits on file, I find that Defendants are entitled to judgment as a matter of law on the § 1983

claim for infringement of a protected liberty interest in Lyons' reputation.

Defendants concede that an allegation of sexual harassment is of a "potentially

stigmatizing nature."  *See e.g., Workman v. Jordan*, 32 F.3d 475 (10th Cir. 1994), *cert. denied,*

514 U.S. 1015 (1995).  I agree with Defendants, however, that Plaintiff has failed to come

forward with sufficient evidence on the other three prongs of the claim.  First, there is a complete

absence of admissible evidence that Lyons did not engage in the acts underlying the charge of

sexual harassment.

Second, Plaintiff neither alleges nor has come forward with evidence  in support of the

"publication" prong.  To be "published," the stigmatizing charge must be made outside of the

---

[2]  In doing so, he did rule that Plaintiff has not claim to procedural due process based on a
property right, only a liberty interest, and that ruling continues as the law of this case.

[3]  If there is an impact on future employment opportunities, it generally stems from the
"stigmatizing" statements made during the course of termination.  Indeed, the name-clearing
hearing remedy is provided only because it gives the employee an opportunity to counterbalance
the "false and defamatory impression about the employee [created by the employer] in connection
with his termination."  *Codd v. Velger,* 429 U.S. 624, 628 (1976).

employer's business. "Intra-government dissemination, by itself, falls short of the Supreme Court's notion of publication: 'to be made public.'" *Asbill v. Housing Authority of Choctaw Nation,* 726 F.2d 1499, 1503 (10th Cir. 1984). It is undisputed that although Plaintiff received a letter of reprimand based on the charge, the matter was an internal agency matter and the reprimand was later withdrawn. The file was given to Plaintiff's immediate supervisor, Simon Romo, who was told he could destroy the record but he did not do so before it was requested for the purposes of this lawsuit. *See Romo Depo. at 96-97; Plf. Depo. at 252.*

The final "foreclosure of opportunities" element is not as broad as Plaintiff argues. A reprimand, difficulty in gaining another position, or denial of a promotion alone appear insufficient to support a liberty interest deprivation.

> [T]here cannot be a deprivation of liberty when even the person's current job is still available to him. As long as employment options within the profession remain, no due process interests have been implicated. Unsurprisingly, every circuit that has addressed the issue has rejected the claim that the denial of a promotion constitutes a deprivation of liberty. [citations omitted] We agree with this consensus. Whereas "preventing someone from advancing in his occupation can be a cruel deprivation, it would stretch the idea of liberty of occupation awfully far . . . to treat a bar to promotion as a deprivation of that liberty."

*Nunez v. City of Los Angeles*, 147 F.3d 867, 874 (9th Cir. 1998) (quoting *Bigby v. City of Chicago*, 766 F.2d 1053, 1057 (7th Cir. 1985); *see also Webster v. Redmond*, 599 F.2d 793 (7th Cir. 1979), *cert. denied,* 444 U.S. 1039 (1980).

Even assuming that a liberty interest was implicated, Lyons voluntarily chose not to pursue the administrative remedies available to him in a timely manner. *See O'Connell v. Co. of Northampton*, 79 F. Supp. 2d 529, 535 (E.D. Pa. 1999) (employee must allege that he timely

requested a hearing to clear his name).  For all of these reasons, including others cited in
Defendants' brief, summary judgment will be entered for Defendants on the § 1983 procedural
due process claim.

### III.  Count I – First Amendment Claim

Plaintiff is now an "Attorney Senior" with the Children's Court in CYFD.  In the fall of
1996, CYFD decided to disqualify Judge Martinez, one of three Children's Court judges in
Albuquerque, from all of its cases.  The events leading to that decision began earlier that summer
when Romo, Plaintiff's supervisor, met with Judge Martinez concerning a situation involving a
social worker.  The Judge was asked to disqualify himself, and he refused.  Later, Romo was
approached by female Children's Court attorneys who made other complaints about Judge
Martinez.  Evidently some within the department perceived differences in the way Judge Martinez
treated female employees of the department.

After internal discussions in the department, the ultimate decision was made to disqualify
Judge Martinez from all of its cases.  Plaintiff opposed CYFD's decision.  In his deposition he
testified that he had:

> always made clear my view, in discussing with social workers, with managers, in
> meetings, and everywhere else, that I considered [Judge Martinez] to be an
> unbiased and fair judge who had the interests of children and families at heart, and
> that I thought the department was making a major error by launching a vendetta
> against him and expressing the view – which wasn't just a view expressed . . . at a
> meeting, but a view expressed publicly . . . that he had something in for the
> department, that he was opposed to the department, that he was trying to get the
> department or the attorneys or social workers.  I never believed that.  I never saw
> any evidence of that.

*Plf. Depo. at 139.*  Plaintiff filed nine grievances during the late summer and fall of 1996, at least
one of which concerned adverse comments made during attorney meetings about the developing

situation with Judge Martinez.  *Id. at 130.*

Plaintiff seeks to hold Defendant Adams,[4] Chief Children's Court Attorney, liable in her individual capacity for her alleged refusal to "support or recommend" an upgrade of his position to Attorney Master in retaliation for: (1) expressing his opinion in opposition to CYFD's decision to routinely disqualify Judge Martinez; and (2) supporting Judge Martinez by taking out an advertisement in the Albuquerque Journal supporting Judge Martinez' reelection.

### A.  Plaintiff's Activities Constitute Protected Speech

In order to constitute protected speech, the expression must be on "a matter of public concern."  Adams concedes that Plaintiff's conduct in connection with the advertisement endorsing Judge Martinez' reelection constitutes protected activity.  Indeed, that was the finding of Judge Hansen.  Adams argues, however, that Lyons' expression of a personal opinion in disagreement with an internal policy without actually accusing CYFD of "wrongdoing" is not a matter of public concern and, therefore, not protected under the First Amendment.[5]

> A statement is characterized as a matter of public concern and not merely a personal employment grievance if it can be "fairly considered as relating to any matter of political, social, or other concern to the community.". . .  To judge whether particular speech relates merely to internal workplace issues, courts must conduct a case by case inquiry, looking to the "content, form and context" of the speech, . . . which includes scrutinizing whether the speaker's purpose was to bring an issue to the public's attention or to air a personal grievance.  . . .  An

---

[4]  Although Plaintiff argues that Defendant Serna knew of his protected First Amendment activities, he does not seek to hold her liable under this count when his Second Amended Complaint is read in conjunction with his Response.  Defendant Romo was voluntarily dismissed by Plaintiff from this action in late 1999.

[5]  Plaintiff contends that Judge Hansen previously held both the advertisement and stating his opinion at work to be protected under the First Amendment.  It is not clear that he did, however, because his opinion only refers to Plaintiff's support for the "reelection" of Judge Martinez.  *Doc. 39 (referencing only "reelection," "political office," "campaign").*

employee's speech must not merely relate generally to a subject matter that is of public interest, but must "sufficiently inform the issue as to be helpful to the public in evaluating the conduct of government."

*Moore v. City of Wynnewood,* 57 F.3d 924, 932 (10th Cir. 1995) (internal citations omitted); *see also Withiam v. Baptist Health Care of Oklahoma, Inc.,* 98 F.3d 581, 583 (10th Cir. 1996).

Applying the above analysis, I am persuaded that Lyons' disagreement with CYFD's decision to disqualify Judge Martinez constitutes a matter of public concern, and not merely an expression of a private grievance. Contrary to Defendant's position, just because Lyons made his disagreement known within the department and not to a public forum does not mean that his statements are of purely "private" concern. *Conaway v. Smith,* 853 F.2d 789, 797 (10th Cir. 1998) (choice of private forum, rather than public, to express concerns, does not remove speech from First Amendment protection); *see also Rankin v. McPherson,* 438 U.S. 378 (1987); *Givhan v. Western Line Consol. School Dist.,* 439 U.S. 410, 414-16 (1979). Indeed, Plaintiff's supervisor testified that "getting into the politics of dealing with the judge and opposing guardian ad litems, . . . did not in any way serve the best interest of the children." *Romo Depo. at 67.*[6]

Moreover, Defendant has not produced evidence that Lyons' expression of his views on the issue was outweighed by CYFD's purported concern that his support of Judge Martinez might compromise his ability to perform his duties. Adams does not identify any other interest CYFD has to justify burdening such speech, nor is she asking me to reconsider Judge Hansen's previous ruling that struck the balance in favor of Plaintiff's First Amendment activity.[7]

---

[6] And, as Judge Hansen noted, the expression of "political views, especially those concerning an upcoming election" qualify as protected speech.

[7] *See Wilson v. Merrell Dow Pharmaceuticals, Inc.,* 160 F.3d 625, 628 (10th Cir. 1998) (application of "law of the case" doctrine when case is transferred to another judge); 18 C. Wright

**B.  Extent of Adam's Knowledge of Plaintiff's Protected Activities**

Adams argues that there "is no evidence that [she] was aware of plaintiff's position regarding Judge Martinez," and that she was "not aware that plaintiff had participated in having the advertisement published and has never seen the advertisement."  Adams further contends that she did not know of Plaintiff's participation in Judge Martinez' retention election.  Plaintiff has failed thus far to come forward with any evidence demonstrating that Adams was aware of the specifics of his involvement in Judge Martinez' reelection effort.  However, Romo testified he told Adams that Plaintiff "was basically a strong supporter of Judge Martinez and was aligned more with some of the guardian ad litems in the contradiction (sic) that had unfolded between the local office and the judges and many of the guardians who supported him" and that her response was that the office had made a decision "and that was the way it was [and there] was nothing to be done about it."  *Romo Depo, at 64.*  Adams has also acknowledged that she "was told by Simon Romo that plaintiff and others disagreed with the decision to disqualify Judge Martinez."  In fact, she testified that through a conversation with  Romo she learned "several attorneys in the office  . . were critical of the department's decision to disqualify Judge Martinez. . . . Jim [Plaintiff] and [another attorney]. . . were mentioned."  *Adams Depo. at 37.*  Therefore, I cannot conclude that the record is devoid of evidence showing Adams knew of Plaintiff's protected conduct.

**C.  Adams' Motive For Not Recommending An Attorney Master Position Cannot Be Conclusively Determined On The Basis Of The Present Record**

Adams admits that she and Romo discussed creation of an Attorney Master position in the Albuquerque region, for which Lyons contends he would be the best qualified applicant, on

---

& A. Miller & E. Cooper, Federal Practice and Procedure, § 4478 (1981 & Supp. 2000).

numerous occasions.  Adams' testimony articulates three neutral philosophical, procedural, and managerial reasons why Plaintiff's desired upgrade has not occurred.

First, Adams testified that she does not make the decision, but rather recommends to her superiors that such positions be created.  It is her managerial opinion, however, that adding Attorney Master positions should be based on CYFD needs and not the individual employee's needs.  She testified that she does not believe an upgrade should be used simply to reward employees – their annual salary increases are for that purpose.  Adams contends that CYFD's needs did not require the creation of the position.

Second, although she has no doubt that Plaintiff can do the work of an Attorney Master, Adams testified to reservations as to Plaintiff's ability to perform as a manager.  She states that the sexual harassment complaint alone did not concern her in this regard.  However, complaints from two other women and a "couple of social workers" regarding their difficulty working with him raised a question in her mind whether Plaintiff would have "difficulty" in a leadership position with women.  *Adams Depo. at 31-35.*

Third, Adams has produced undisputed evidence that Romo had not presented her with a formal "plan" justifying another Attorney Master position in Albuquerque.  She explained that two other master attorney positions were created in offices in Las Cruces and Carlsbad (Southern and Eastern Regions), because those regions did not have any master attorney positions at the time of the reclassification.

Having met her burden of producing evidence that she would have reached the same decision absent Plaintiff's protected speech, Adams argues that the burden now shifts to Plaintiff to show that:  (1) these proffered reasons are pretext; and (2) that Lyons' protected speech was a

substantial or motivating factor in the decision not to upgrade his position.  Adams argues that
Plaintiff has completely failed to produce such evidence.

On the record as it presently stands, I cannot conclude as a matter of fact and law that the
neutral reasons advanced by Adams are why no upgrade has ever been requested.  Adams first
contends that the decision to create the Attorney Master position should be made in response to
CYFD's needs and that she lacked that justification.[8]  Yet Romo testified that a written request to
create the position "would basically formalize what I had already created" in that Lyons was
already performing the responsibilities of an Attorney Master in the Albuquerque region.  He had
not made the formal request to Adams because he "believed" it would be futile since Lyons was
the likely choice for the Albuquerque Attorney Master position.

Moreover, the present record indicates that it is a simple, ministerial act to make a request
for a new position.  Adams testified that she need only sign a memo requesting that the Division
Director sign a form that makes the request of the Personnel Department to add a position.  As
Romo's supervisor, and without any evidence to the contrary, I assume that Adams would have
the authority to initiate a request for a new Attorney Master position even absent a formal request
from  Romo.  By leaving it to  Romo to decide whether to press the issue, the evidence creates an
issue of fact regarding Adams' motivation.

Adams also relies on employee informal "complaints" that it was difficult to work with
Lyons as evidence supporting concerns as to his managerial abilities.  Her deposition testimony on
this point is extremely vague and without specifics (*e.g.*, as to complaints – "it was something like

---

[8]  Plaintiff has also presented evidence that during the relevant time period, an Attorney
Master position held by Diane Garrity in the Office of General Counsel was transferred to the
Children's Court division.  Defendant contends that this position was not required to be posted.

[sexual harassment], something that somebody felt was uncomfortable for them"). *Adams Depo. at 34*. Romo denied that he had received any substantive complaints about Plaintiff from his co-workers. *Romo Depo. at 125*. He further testified that he told Adams that he would recommend Jim Lyons for an Attorney Master position and wanted him promoted to that position. *Id. at 15*.

In the light most favorable to the non-movant, the evidence presents disputed issues of material fact as to whether the failure to create an Attorney Master position for possible upgrade by Lyons was in retaliation for Lyons' exercise of protected speech. Resolution requires a credibility determination that is inappropriate for me to make on the basis of current the record. *E.g., Butler v. City of Prairie Village,* 172 F.3d 736, 746 (10th Cir. 1999); *Marx v. Schnuck Markets, Inc.,* 76 F.3d 324, 327-29 (10th Cir.), *cert. denied,* 518 U.S. 1019 (1996). Therefore, this claim survives Defendant's Motion for Summary Judgment unless qualified immunity applies.

### D.  Adams Is Not Entitled To Qualified Immunity

Having found, as I have that Plaintiff's conduct is protected under the First Amendment and that his interest in speech outweighs the previously-tendered governmental interest, the "second step is to determine whether the right violated was clearly established at the time the adverse action was taken against the employee." *Lee v. Nicholl,* 197 F.3d 1291, 1294 (10th Cir. 1999). Based on the cases cited above, the cases upon which they rely and *Monitor Patriot v. Roy,* 401 U.S. 265 (1971) (cited by Judge Hansen in his opinion) find that an employee's right not to be retaliated against for protected speech analogous to that at issue has long been clearly established. Accordingly, I find Adams is not entitled to qualified immunity.

Wherefore,

**IT IS HEREBY ORDERED AS FOLLOWS:**

1. Defendant Department and Defendant Serna are **dismissed with prejudice**;

2. Defendants' Motion For Summary Judgment Dismissing Count Two of Plaintiff's Second Amended Complaint (*Doc. 76*) is **granted**;

3. Defendants' Motion For Summary Judgment Dismissing Count One of Plaintiff's Second Amended Complaint *(Doc. 70)* is **granted in part and denied in part**.  The matter will proceed to a trial only on Count One alleging a violation of Plaintiff's First Amendment rights against Defendant Adams solely in her individual capacity.


_____
UNITED STATES MAGISTRATE JUDGE